# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **DALE FRANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:14CV702NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Dale Frank (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 12). Defendant has filed a brief in support of the Answer. (Doc. 17). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 8).

# I.
# PROCEDURAL HISTORY

On January 25, 2011, Plaintiff filed his applications for DIB and SSI. (Tr. 152-67). Plaintiff alleged a disability onset date of March 1, 2009. Plaintiff's applications were denied, and he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 100-104, 107-108). After a hearing, by decision, dated November 30, 2012, the ALJ found Plaintiff not disabled. (Tr. 11-23). On February 3, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). As such, the ALJ's decision stands as the final decision of the Commissioner.

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social

Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228

F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See

id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  <u>See</u> <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v. Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  <u>See</u> <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.  <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used.  An ALJ posing a hypothetical to a VE is not required to

include all of a plaintiff's limitations, but only those which the ALJ finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff stated, in his Disability Report, that he was disabled due to anxiety, bipolar disorder, social disorder, arthritis, back problems, mania, depression, and paranoia. (Tr. 219). Plaintiff, who was born in 1962, testified at the administrative hearing that he had been unable to hold a job because he had trouble keeping up and understanding instructions; he had nightmares and suicidal thoughts once every two to four weeks; he felt tired due to his depression; he had visual

hallucinations and heard voices; and he had panic attacks. (Tr. 67, 72-75). As for his physical impairments, Plaintiff testified that, when his blood sugars fluctuated, he had hot spells and blurry vision; his diabetic medications sometimes made him shaky, sweaty, and hot and could make him pass out; he had muscle spasms in his back due to an old gunshot wound; he had pain in his back and knees due to arthritis; he had trouble walking up and down stairs and had shortness of breath; and he thought he could sit for an hour or an hour and twenty minutes and lift or carry twenty-five pounds. (Tr. 77-80).

The ALJ found that Plaintiff met the insured status requirements through June 30, 2014; that Plaintiff had not engaged in substantial gainful employment since March 1, 2009, his alleged onset date; that he had the severe impairments of residuals from gunshot wounds, diabetes, mild degenerative spurring of the lumbar and thoracic spine, mild degenerative changes of both knees, bipolar disorder, psychotic disorder, and anxiety disorder; and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ concluded that Plaintiff had the following RFC: He could lift and carry 10 pounds frequently and 20 pounds occasionally; he could stand or walk 6 hours out of an 8-hour work day; he was unable to climb ladders, ropes, or scaffolds; he had to avoid all operational control of moving machinery, working in unprotected heights, and the use of hazardous machinery; he was limited to work

that involved only simple, routine, and repetitive tasks; and he could perform only low-stress work, as defined as requiring only occasional decision making, use of judgment and changes in the work setting with no interaction with the public, only casual and infrequent contact with coworkers, and contact with supervisors concerning work duties (when work duties are being performed satisfactorily) occurring no more than four times per work day. The ALJ further determined that Plaintiff had no relevant past work; that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy which Plaintiff could perform; and that, therefore, Plaintiff was not disabled. (Tr. 11-23).

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence for numerous reasons and that the ALJ failed to provide a credibility analysis. (Doc. 12). For the following reasons, the court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A.    Plaintiff's Credibility:**

Although Plaintiff contends the ALJ did not consider Plaintiff's credibility, the court notes that the ALJ did consider factors relevant to Plaintiff's credibility. As such, the court will first consider these factors. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's

determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing <u>Tellez v. Barnhart</u>, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. <u>See</u> <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>Hutsell</u>, 892 F.2d at 750; <u>Benskin</u>, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite <u>Polaski</u>, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. <u>Randolph v. Barnhart</u>, 386 F.3d 835, 842 (8th Cir. 2004); <u>Wheeler v. Apfel</u>, 224 F.3d 891, 895 n.3 (8th Cir. 2000); <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996); <u>Montgomery v. Chater</u>, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each <u>Polaski</u> factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. <u>See</u> <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000). <u>See also</u> <u>Tucker v. Barnhart</u>, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each <u>Polaski</u> factor as long as the analytical framework is

recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ questioned Plaintiff's credibility regarding the severity of his symptoms based on Plaintiff's failure to follow treatment advice. See Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) (failure to file a recommended course of treatment weighs against a claimant's credibility). The court notes that when Plaintiff presented for back pain, in May 2009, he refused to allow much palpation to determine his pain level; he refused "SLR hip motion testing"; and he refused "much hands on assessment." (Tr. 425). Also, an April 27, 2010 progress note states that Plaintiff said that he did not want to see a psychiatrist. (Tr. 336). When Plaintiff presented for complaints regarding his blood sugars, on June 26, 2012, he

reported that he was not following a diabetic diet. (Tr. 599). Additionally, Plaintiff missed a doctor's appointment on July 9, 2012. (Tr. 531). Further, on August 3, 2012, and September 6, 2012, Musaddeque Ahmad, M.D.,[1] reported that Plaintiff was non-compliant with a diabetic diet. (Tr. 563, 559).

Second, the ALJ considered the lack of objective medical findings to support Plaintiff's allegations regarding the severity of his conditions. See 20 CFR § 404.1529(c)(2) (agency will consider "objective medical evidence" when evaluating symptoms); Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (ALJ may find claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary). The ALJ specifically noted that Plaintiff's lack of limitations in extremity strength or range of motion (ROM) was inconsistent with disabling orthopedic impairments. (Tr. 18). In this regard, although Plaintiff complained of right knee pain, an April 4, 2009 radiology report states that an x-ray of Plaintiff's right knee showed mild hypertrophic degenerative changes, and "[n]o evidence of fracture or other additional bone abnormalities," and that the impression was "mild osteoarthritis." (Tr. 292). Although Plaintiff complained of disability due to his having a bullet fragment from a gunshot wound, another x-ray of April 4, 2009, showed a bullet fragment "outside the

---

[1] Although this doctor's name is Musaddeque Ahmad, the ALJ and the parties refer to him as Dr. Musaddeque. Thus, in order to avoid confusion, the court will do the same.

pleura posteriorly on portable lateral view of the chest," a normal heart size, and no active pulmonary infiltrates. (Tr. 291). Upon examination, when Plaintiff presented in the emergency room for back pain, on May 16, 2009, he had normal ROM, no focul weakness, and no focal sensory loss. He denied respiratory, cardiovascular, and neurological and psychological symptoms. (Tr. 424-25). A May 16, 2009 x-ray of Plaintiff's lumbar spine showed metallic densities compatible with old gunshot fragments, but no abnormality of the lumbar vertical vertebral body heights, disk space width, or alignment. Also, there were no abnormalities at the lumbar articulating facets or other visualized posterior elements. (Tr. 427).

On July 12, 2009, when Plaintiff presented to the emergency room for back pain, it was reported he was "[w]ell appearing, [had] [n]o [p]ain [d]istress, and was [w]ell-[n]ourished." Also, his strength and ROM were intact, he had no edema, no calf tenderness, and he walked around the room with normal up-right gait and no deformity." (Tr. 430-31). When Plaintiff presented in the emergency room for "back/hip pain," on March 28, 2010, Plaintiff had intact ROM and strength, no edema, no calf tenderness, intact "sensory/motor" and reflexes, and normal saddle sensation. (Tr. 18, 465-66).

March 3, 2011 x-rays of Plaintiff's knees showed "[m]ild degenerative changes of the left knee without evidence for an acute process." (Tr. 472, 474). A

lumbar spine x-ray of this same date showed "[m]ild degenerative spurring of the lumbar spine and lower thoracic spine without acute process." (Tr. 473). On May 24, 2011, Jeffrey T. Reese, M.D., reported that Plaintiff's stress echocardiogram was normal and negative for ischemia. (Tr. 646).

On May 16, 2012, when Plaintiff presented with shortness of breath, wheezing, and chest pain, Dr. Musaddeque reported that Plaintiff had no tingling or numbness. The doctor counseled Plaintiff on the dangers of tobacco use and urged him to quit smoking. (Tr. 570-71). When Plaintiff presented, on June 26, 2012, complaining about his blood sugar, his strength and ROM were intact; as for his cardiovascular system, he had normal pulses, no rub, and no murmur; and, in regard to his respiratory system, his airway was patent, breath sounds were equal, and his respiration was non-labored. (Tr. 600). When Plaintiff again presented with complaints regarding his blood sugar, on July 3, 2012, a review of his systems showed no musculoskeletal symptoms, no "neurological/psych" symptoms, no cardiovascular symptoms, and no respiratory symptoms. Plaintiff was instructed on using insulin "as a rescue dose to lower blood sugar." (Tr. 593, 596).

As for Plaintiff's alleged mental impairments, it was reported, on July 12, 2009, that Plaintiff had "no pertinent psych hx." (Tr. 430-31). On March 28, 2010, Plaintiff's affect and mood were appropriate, and it was reported that Plaintiff had "no pertinent psych hx." (Tr. 465-66).

On April 21, 2011, Jhansi Vasireddy, M.D., saw Plaintiff for a psychiatric evaluation.  Pursuant to a mental status examination, Dr. Vasireddy reported that Plaintiff had normal psychomotor activity and good eye contact; his mood and affect were appropriate; his thought process had "mild circumstantiality and thought blocking"; his thought content did not reveal any suicidal ideations; his concentration, attention span, cognitive function, and abstract reasoning were intact; and his insight and judgment were fair to poor.  (Tr. 498-99).  On August 2, 2011, Dr. Vasireddy reported that Plaintiff was oriented and alert; he had normal psychomotor activity; his mood and affect were "mildly constricted"; he had no suicidal ideation; he had no paranoid delusions; and his insight and judgment were fair to poor.  (Tr. 549).

Plaintiff was hospitalized from August 13, 2011, to August 19, 2011, for complaints of his being depressed.  Upon discharge, it was reported that Plaintiff was stabilized, his mood and affect were better, his depressive symptoms were under control, and his diabetes was under control.  At the time of discharge he was not suicidal or homicidal.  (Tr. 631-36).  Plaintiff was also hospitalized from October 12, 2011, to October 18, 2011, when he complained of being suicidal/homicidal.  Upon discharge, it was reported that he had improved, and was to follow up with his own psychiatrist.  (Tr. 614-25).  When Plaintiff was seen on October 25, 2011, Dr. Musaddeque reported that Plaintiff had no depression, sleep

disturbances, anxiety, hallucinations, or mania. (Tr. 20-21, 574). On October 31, 2011, Dr. Vasireddy reported that Plaintiff had normal psychomotor activity and good eye contact; he was alert and oriented; he had no suicidal ideations; his sleep and appetite were good; he had no paranoid delusions; and his insight and judgment were fair. (Tr. 546).

On February 21, 2012, Dr. Vasireddy reported that Plaintiff was alert and oriented; he was pleasant and cooperative; his thought process was goal directed; his thought content did not reveal any suicidal ideations; he had no feelings of hopelessness or worthlessness or no paranoid delusions, and his insight and judgment were fair. (Tr. 545). On May 15, 2012, Dr. Vasireddy reported that Plaintiff was alert and oriented; he had normal psychomotor activity; he had no suicidal ideations; he had no mood swings, irritability, or anxiety; and his insight and judgment were fair to poor. (Tr. 536). Also, on May 16, July 25, August 3, and September 6, 2012, Dr. Musaddeque reported Plaintiff had no depression, anxiety, mania, or hallucinations. (Tr. 20, 560, 564, 567, 570).

Third, the ALJ considered that Plaintiff received conservative treatment. Conservative treatment is consistent with discrediting a claimant's allegation of disabling pain. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Indeed, in May 2009, when Plaintiff refused to allow a complete physical examination, Plaintiff said he "just need[ed] a back brace and pain medication." (Tr. 425). Also, Dr.

Vasireddy reported, in April 2011 that he recommended supportive therapy and individual therapy to improve Plaintiff's ability to deal with stressors. Dr. Vasireddy also recommended lifestyle changes, abstinence from drugs and alcohol, exercise, a healthy diet, and smoking cessation on that date and in February 2012. (Tr. 500, 545).

Fourth, the ALJ considered inconsistencies between Plaintiff's statements regarding the severity of his conditions and other evidence of record. Contradictions between a claimant's sworn testimony and what he actually told physicians weighs against the claimant's credibility. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006). Indeed, when Plaintiff presented for back pain, in May 2009, he denied any psychological problems or symptoms. (Tr. 424). Plaintiff argues that, when he was referred to the hospital, on October 12, 2011, Dr. Musaddeque reported that Plaintiff had suicidal thoughts that required he have a 96-hour hold. (Doc. 12 at 9-10). The record reflects when Plaintiff arrived at the hospital, he stated that the doctor had "misunderstood what he was trying to tell him"; he said he felt depressed but denied any current suicidal ideation. (Tr. 614).

Fifth, the ALJ noted that Plaintiff was not on any medications for his mental impairments and was not seeing a psychiatrist and did not have regular psychiatric treatment. (Tr. 19, 336). A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. See Dukes v. Barnhart, 436 F.3d

923, 928 (8th Cir. 2006) (upholding an ALJ's determination that a claimant lacked credibility due in part to "absence of hospitalizations . . ., limited treatment of symptoms, [and] failure to diligently seek medical care"); 20 C.F.R. § 404.1529(c)(3)(v) (the agency will consider the claimant's treatment when evaluating her symptoms). In fact, in April 2010, Plaintiff reported that he was not taking medication for his alleged mental impairment and was not seeing a psychiatrist. (Tr. 19, 226).

Although Plaintiff argues that the ALJ failed to complete his analysis regarding Plaintiff's failure to have mental health treatment in 2010, in fact, Plaintiff did not seek treatment for his mental impairments from his alleged onset date of March 1, 2009, through April 21, 2011, on which date he saw Dr. Vasireddy for a consultative examination. Thus, when Plaintiff saw Dr. Vasireddy, it was two years after his alleged onset date. (Tr. 497-500). Indeed, as considered by the ALJ, Plaintiff's last appointment with Dr. Vasireddy was on May 15, 2012. (Tr. 21, 536). Additionally, on August 13, 2012, Plaintiff was advised that he needed to have an appointment scheduled by August 27, 2012, with Dr. Vasireddy or his chart would be closed. (Tr. 529).

Also, in regard to Plaintiff's lack of treatment for his alleged physical impairments, on May 16, 2012, when Plaintiff presented with shortness of breath, wheezing, and chest pain, Dr. Musaddeque reported that he had not seen Plaintiff

for seven months, although Plaintiff said he went to the Veterans Administration Hospital to get his medications refilled. (Tr. 569).

Sixth, the ALJ considered that, when Plaintiff was hospitalized in August and October 2011, no doctor opined that Plaintiff's conditions were disabling. (Tr. 20). See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.") (citing Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir. 1996)). See also Eichelberger, 390 F.3d at 590 (ALJ could find claimant not credible based in part on fact that no physician imposed any work-related restrictions).

Seventh, to the extent Plaintiff argues the ALJ did not consider his activities of daily living, the ALJ stated that Plaintiff's treatment records did not document any limitations in regard to Plaintiff's activities of daily living. (Tr. 15). The court notes that Plaintiff stated, in a Function Report – Adult that he prepared his own meals; when he went out, he drove a car; he could go out alone; he shopped in stores for food; he shopped once a week; he could pay bills, count change, use money, and handle a savings account "somewhat"; and he spent time with others, "sometime[s] on [the] phone." (Tr. 237-39). While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his

subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Eichelberger, 390 F.3d at 590 (ALJ properly considered that plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792. See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

Eighth, to the extent the ALJ did not consider every Polaski factor, an ALJ is not required to do so. See Samons v. Apfel, 497 F.3d 813, 820 (8th Cir. 2007) ("[W]e have not required the ALJ's decision to include a discussion of how every Polaski 'factor' relates to the claimant's credibility."); Goff, 421 F.3d at 791 (rejecting argument that "the ALJ was required to make an express credibility finding on each of the Polaski factors."). In conclusion, the court finds that the

ALJ did consider Plaintiff's credibility and that the ALJ's decision, in this regard, is based on substantial evidence.

## B.    Plaintiff's RFC:

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations."  20 C.F.R. § 404.1545(a).  "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments."  Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001).  "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

As stated above, the ALJ found that Plaintiff had the following RFC:  He could lift and carry 10 pounds frequently and 20 pounds occasionally; he could stand or walk 6 hours out of an 8-hour work day; he was unable to climb ladders, ropes, or scaffolds; he had to avoid all operational control of moving machinery, working in unprotected heights, and the use of hazardous machinery; he was limited to work that involved only simple, routine, and repetitive tasks; and he could perform only low-stress work, as defined as requiring only occasional

decision making, use of judgment and changes in the work setting with no interaction with the public, only casual and infrequent contact with coworkers, and contact with supervisors concerning work duties (when work duties are being performed satisfactorily) occurring no more than four times per work day.

Plaintiff argues that, upon formulating Plaintiff's RFC, the ALJ failed to point to any medical evidence in support of his determination, and the ALJ did not provide a narrative discussion describing how the evidence supported his decision. Concerning Plaintiff's mental impairments, Plaintiff contends that the ALJ did not sufficiently discuss Plaintiff's hospitalizations or evidence from Dr. Vasireddy or Dr. Musaddeque; the ALJ cited only to "selective" medical notes; the ALJ did not properly consider Plaintiff's Global Assessment of Functioning (GAF) scores; the ALJ gave improper weight to the opinion of Gretchen Brandhorst, Psy. D., a non-treating doctor; and the ALJ provided a selective narrative summary of the medical evidence. (Doc. 12 at 8-12). For the following reasons, the court finds Plaintiff's arguments without merit.

First, as required by the case law and Regulations, when determining Plaintiff's RFC, the ALJ considered the medical records as discussed above in regard to Plaintiff's credibility, including records from Plaintiff's hospitalizations and records from Dr. Musaddeque and Dr. Vasireddy. Notably, as discussed above, in May 2009, Plaintiff had normal ROM; in March 2010, Plaintiff's

strength and ROM were intact; in March 2011, he had only mild degenerative changes in his left knee, lumbar spine, and lower thoracic spine; and, in June 2012, Plaintiff's ROM was intact. In regard to Plaintiff's alleged mental impairments, as discussed above, in July 2009 and March 2010, Plaintiff had no pertinent psychological symptoms; Plaintiff did not have medical treatment for his mental conditions until April 2011; in October 2011 and February and May 2012, Plaintiff was alert and oriented, had no suicidal ideations; and, in May 2012, he had no mood swings, irritability, or anxiety.

Second, as discussed above, Plaintiff did not have ongoing psychiatric counseling until April 2011 and did not see Dr. Vasireddy after May 2012. An absence of evidence of ongoing counseling or psychiatric treatment or deterioration or change in a claimant's mental capabilities disfavors a finding of disability. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000).

Third, although, in an October 25, 2011 letter to "Whom It May Concern," Dr. Musaddeque opined that Plaintiff was "permanently and totally disabled [] due to his multiple psychiatric conditions (Tr. 527), as Plaintiff's treating doctor, Dr. Musaddeque's opinion was not entitled to controlling weight if it was not supported by medically acceptable clinical or diagnostic data, see Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995), or if it was inconsistent with his treatment notes, see Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009) ("It is

permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.").

Notably, Dr. Musaddeque reported, on the same date that he rendered his opinion that Plaintiff was disabled due to psychological problems, that Plaintiff had no depression, sleep disturbances, anxiety, hallucinations, or mania. Thus, Dr. Musaddeque's opinion was inconsistent with his treatment notes and on other dates he made similar findings. (Tr. 560, 564, 567). In any case, Dr. Musaddeque was Plaintiff's primary care physician; he was not a psychiatrist or psychologist. See Brown v. Astrue, 611 F.3d 941, 953 (8th Cir. 2010); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than the opinion of a source who is not a specialist."). See also 20 C.F.R. §§ 404.1527(d)(5) and 416.927(d)(5). Dr. Musaddeque's opinion regarding the severity of Plaintiff's mental impairments was, therefore, not entitled to controlling weight. See Brown v. Astrue, 611 F.3d 941, 953 (8th Cir. 2010).

Moreover, Dr. Musaddeque's brief, conclusory letter stating that Plaintiff was disabled was not binding on the ALJ. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly

discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature.").

Fourth, the ALJ gave weight to the opinion of Dr. Brandhorst, a State agency psychiatric consultant, who, after reviewing Plaintiff's medical records, opined, on July 14, 2011, that Plaintiff had moderate limitations in regard to maintaining social functioning and concentration, persistence or pace, to understanding and remembering detailed instructions, to interacting appropriately with the general public, to getting along with coworkers, and to responding appropriately to changes in the work setting. Plaintiff was not significantly limited in the ability to understand and remember very short and simple instructions, to carry out very short and simple instructions, to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, to make simple work-related decisions, to complete a normal workday without interruptions from psychologically-based symptoms, and to be aware of normal hazards and take appropriate precautions. (Tr. 502-16). As a state agency consultant and psychologist, Dr. Brandhorst was a highly qualified expert, upon whose opinion the ALJ could rely. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence.); Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007)

(moderate limitations do not prevent an individual from functioning "satisfactorily").

Fifth, Dr. Brandhorst's opinion was consistent with the opinion of another State agency medical consultant, William McCollum, M.D., who opined, on March 12, 2012, after reviewing the medical and non-medical evidence, that Plaintiff was capable of simple, repetitive tasks away from the public. Upon reaching this conclusion, Dr. McCollum considered that Plaintiff had not required inpatient treatment for his mental health conditions and that he had been noncompliant with treatment. (Tr. 526). Dr. McCollum was also a highly qualified expert, upon whose opinion the ALJ could rely. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

Sixth, upon considering the opinions of Dr. McCullum, Dr. Brandhorst, Dr. Musaddeque, and Dr. Vasireddy regarding Plaintiff's impairments, the ALJ was fulfilling his role to resolve conflicts between the opinions of doctors of record. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (internal quotation marks omitted).

Seventh, in regard to Plaintiff's argument that the ALJ did not properly consider Plaintiff's GAF scores (Doc. 12 at 13), Global Assessment of Functioning (GAF) is the clinician's judgment of the individual's overall level of functioning,

not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32. See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] . . . reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.'") (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008)). See also Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 58-60 supported ALJ's limitation to simple, routine, repetitive work).

Indeed, while Plaintiff was hospitalized in 2011, his GAF was assessed as 20 to 30, and upon discharge it was assessed as 30. (Tr. 632, 625). As discussed above in regard to Plaintiff's credibility, however, upon discharge it was also

reported that Plaintiff's condition had improved. (Tr. 625). Also, Thomas J. Spencer, Psy. D., reported, in October 2010, that Plaintiff's GAF was 45 to 60 (Tr. 281), and Dr. Vasireddy reported that Plaintiff had a GAF of 50 to 55 on one occasion, and that he had a GAF of 55 to 60 on another (Tr. 499, 536).

The ALJ noted, however, that Plaintiff's low GAF scores were not supported because Plaintiff received no regular psychiatric care and was not taking medications for his mental impairments. (Tr. 20, 336, 536). In any case, Plaintiff's GAF scores of 51 to 60 represent only "moderate" symptoms of impairment. See also Goff, 421 F.3d at 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations). Moreover, an ALJ may afford greater weight to medical evidence and testimony than to GAF scores. Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010); Grim v. Colvin, 2014 WL 859840, at *7-8 (E.D. Mo. Mar. 5, 2014) (ALJ properly found claimant's mental impairments were not serious despite the presence of GAF scores that reflected moderate or serious symptoms).

Further, as discussed above, in April 2011, when he reported Plaintiff had a GAF of 50 to 55, Dr. Vasireddy also reported that, upon examination, Plaintiff's mood and affect were appropriate, his thought content did not reveal suicidal ideations, and Plaintiff's cognitive function was intact. Dr. Vasireddy also noted Plaintiff's subjective reporting of his symptoms, such as that his anxiety was worse

in public places, he heard voices "on and off," and he saw "bloody stuff" coming at him very fast and hitting him in the face." (Tr. 499). See Renstrom v. Astrue, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (affirming where ALJ did not give controlling weight to opinion of treating doctor, where doctor's opinion was "largely based on [claimant's] subjective complaints").

Finally, the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," although it may still be used to assist an ALJ in assessing a claimant's level of functioning. Halverson v. Astrue, 600 F.3d 922, 930-31 (8th Cir. 2010) (quoting 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000), and citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity], it is not essential to the RFC's accuracy.").

Eighth, to the extent Plaintiff argues the ALJ failed to consider the opinion of Dr. Spencer who opined that Plaintiff was disabled for purposes of proceedings before the Missouri Department of Social Services (MDSS) (Tr. 278-81), and to the extent Plaintiff argues that the ALJ did not consider the determination of the MDSS that Plaintiff was disabled (Tr. 192-201), an "ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits, 20 C.F.R. § 404.1504." Pelkey v.

Barnhart, 433 F.3d 575, 579 (8th Cir. 2006) (quoting Fisher v. Shalala, 41 F.3d 1261, 1262 (8th Cir. 1994) (per curiam) ("There is no support for [the claimant]'s contention that his sixty-percent service-connected disability rating equates with an inability to engage in any substantial gainful activity under social security standards."). See also Cruze v. Chater, 85 F.3d 1320, 1324 (8th Cir. 1996) (holding that whether social security disability claimant is disabled under state law is not binding on Commissioner of Social Security); Jenkins v. Chater, 76 F.3d 231, 233 (8th Cir. 1996) (holding that a disability determination by the VA is not binding on an ALJ considering a Social Security applicant's claim for disability benefits).

Moreover, as noted by the ALJ, Dr. Spencer opined that Plaintiff's prognosis would "likely improve[]," with appropriate treatment and compliance. (Tr. 281). For purposes of a Social Security claimant's being found disabled, conditions which can be controlled by treatment are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009). In any case, as noted by the ALJ, Dr. Spencer's findings were based upon Plaintiff's condition when he was not taking medications for his mental condition or receiving psychiatric care. (Tr. 20, 278).

Ninth, the limitations imposed by the ALJ were actually greater than those imposed by Dr. Brandhorst and Dr. McCollum, as the ALJ found that Plaintiff was

limited to simple, routine, and repetitive tasks, low-stress work, occasional use of judgment, occasional changes in the work setting with no interaction with the public, casual and infrequent contact with coworkers, and contact with supervisors concerning work duties occurring no more than four times a work day.

Tenth, Plaintiff acknowledged, in an April 3, 2011 Function Report – Adult, that his alleged disabling conditions did not affect his ability to stand, sit, talk, see, or use his hands. (Tr. 240).

Eleventh, the ALJ did not adopt the opinion of any one medical source of record, but rather, upon formulating Plaintiff's RFC, considered all the opinions of record. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). An ALJ, moreover, "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011).

Twelfth, to the extent Plaintiff contends that Dr. Brandhorst and Dr. McCollum did not have the benefit of reviewing all the evidence of records, including Plaintiff's subsequent treatment notes and hospitalization records when

they rendered their opinions in July 2011 and March 2012, respectively, regarding Plaintiff's alleged mental health impairments, Dr. Vasireddy's records do not reflect that Plaintiff's condition detrimentally changed after July 2011. (Tr. 513, 526).

Thirteenth, to the extent the ALJ may not have specifically addressed, in his decision, aspects of Plaintiff's medical records, it does not mean the ALJ did not consider these records. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). To the extent Plaintiff cites deficiencies in the ALJ's decision writing to support his argument that the ALJ's decision is not based on substantial evidence, a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case. Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999). Plaintiff has not referenced any deficiencies which would affect the outcome of the ALJ's RFC determination.

In conclusion, the court finds that when determining Plaintiff's RFC, as required by the Regulations and case law, the ALJ considered the combination of Plaintiff's impairments, and based his RFC determination on all the credible evidence of record. To the extent Plaintiff suggests the ALJ failed to include in

Plaintiff's RFC limitations beyond those which the ALJ found credible, a claimant's RFC need only include his credible limitations.  See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").  Further, the court finds that ALJ's RFC finding is based on substantial evidence and that it is consistent with the Regulations and case law.

After determining Plaintiff's RFC, the ALJ submitted a hypothetical to a VE, which described a person of Plaintiff's age and with Plaintiff's work history, education, and RFC, and the VE opined that there was work in the national economy which the hypothetical person could perform.  See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations).  The ALJ considered that the VE's testimony was consistent with the information

contained in the Dictionary of Occupational Titles. Consequently, the ALJ found Plaintiff not disabled. As such, the court finds that the ALJ's decision is based on substantial evidence and consistent with the Regulations and case law.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint is **DENIED** (Docs. 1, 12).

Dated this 8th day of September 2015.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE